### No. 28,552.

The Bridgeport Machine Company, *Appellee,* v. The Central State Bank of Wichita and The Merchants State Bank of Wichita, *Appellants.*

(281 Pac. 907.)

36

Opinion filed November 9, 1929.

*J. W. Blood* and *T. A. Noftzger,* both of Wichita, for the appellants.

*W. E. Holmes, D. W. Eaton* and *Mark H. Adams,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The question involved here is whether the defendant, the Merchants State Bank, became liable to the plaintiff by reason of the acceptance by the Central State Bank of an assignment executed by C. A. Nibert. The plaintiff prevailed, and the Merchants State Bank appeals.

The facts were substantially these: Nibert entered into a contract with D. W. Preston and L. H. Pasewalk to drill two oil wells, at the completion of which Nibert was to receive $20,000 for his work. To secure Nibert, Preston and Pasewalk deposited in the Central State Bank of Wichita duly assigned purchase orders payable to Nibert upon completion of the wells, aggregating $20,000. Nibert borrowed $13,500 of the Central State Bank, giving his note and depositing as security the purchase orders. On November 9, 1925, Nibert gave the plaintiff an order on the Central State Bank for $1,500 in payment of supplies purchased from the plaintiff, with the understanding that this sum should be deducted from any amount which might become due him on the purchase orders. The order was accepted by the Central State Bank subject to receipt of the money on its agreement. In February, 1926, the Central State Bank sold out to the Merchants State Bank, of Wichita, delivering to the latter all its assets, including the Nibert paper, under a contract by the terms of which the Merchants State Bank reserved a right to reject paper and return it to the Central State Bank. Nibert was unable to complete the wells with the $13,500 (borrowed from the Central State Bank), was advanced more money, and at the time the wells were completed was indebted to the Central State Bank in a sum in excess of $20,000.

The defendant contends that inasmuch as payment of the sum plaintiff sued for ($1,500) was contingent upon any money due him on the purchase orders, the fact that not only was nothing due him at the end of the deal but that he was, on the contrary, indebted to the Central State Bank in the amount of something like $8,000, precluded liability on the part of the defendant in this action.

There was evidence that the Central State Bank held as security for the Nibert obligations, in addition to the purchase orders for $20,000, a deed to his house and a deed to some other property. The order (assignment) was accepted by the Central State Bank in this language: "the amount to be deducted from the amount due on purchase orders . . . when such money is received." R. E. Booth, president of the Merchants State Bank, testified:

"I never knew anything about the order which Nibert had given to Bridgeport Machine Company for $1,500 until we got a letter from the Bridgeport Company. When we got that letter I went to Guinn and asked him if he knew anything about it. . . . We afterwards advanced to the Central State Bank upon its own notes money which it was to furnish to Nibert to complete the wells. . . . We collected the entire amount of the purchase orders and then paid Preston and Pasewalk about $2,900 which they had advanced to Nibert. . . . The letter from the Bridgeport Machine Company which I referred to is the letter of March 8, which has been offered in evidence. We did not advance to the Central State Bank any money to be used by Nibert until after we got the letter from the Bridgeport . . . I didn't answer the letter. . . . We started an investigation of the matter immediately upon getting that letter."

J. W. Blood testified that the letter from the Bridgeport Machine Company, of March 8, was shown to him as attorney for the Merchants State Bank and as a director of that bank a day or two after it came. He stated:

"We searched for a copy of the order mentioned in the letter but didn't find it. I afterwards got a copy of the order and that was the first I knew of the order. I was present when the settlement of the matter was made and when Preston and Pasewalk received about $2,900 out of the $20,000 purchase orders and the remainder was applied to the Nibert notes which were taken over from the Central State Bank. Mr. Booth showed me the letter of March 8, from the Bridgeport Machine Company, and I told Mr. Booth that if there was anything in it to let the Central Liquidating Committee take care of it; that it wasn't any of our funeral."

The Central State Bank was not bound to pay the Bridgeport Machine Company unless it received the purchase money under the purchase contracts. Shortly after the acceptance of the order the Merchants State Bank took over all the assets of the Central State Bank. It appears that after this occurred the existence of the order and its acceptance were brought to the attention of the officers of the Merchants State Bank through conversations with plaintiff's credit manager and by the letter above mentioned. It is clear that the Merchants State Bank knew of the order and afterwards col-

lected $20,000 on the purchase orders; that it applied the money, first, to the payment of approximately $2,000 which had been duly advanced to Nibert by Preston and Pasewalk, and the balance to the payment of its own indebtedness against Nibert. It is argued that nothing ever became due under Nibert's order. This is not correct. The order was to be paid out of a certain fund, that is, the purchase orders. The Merchants State Bank received the proceeds from these purchase orders and these proceeds were Nibert's.

It is argued that the Merchants State Bank did not assume the obligation to the plaintiff. It did, in effect. It took the proceeds of the purchase orders with notice that Nibert had assigned $1,500 of such proceeds to the plaintiff. We are of the opinion that the money from the purchase orders was a particular fund accruing to Nibert which he had the right to assign; that he assigned $1,500 of it to the plaintiff; that at the time he made the assignment there were ample funds with which to pay it, and that the appellant, through the Central State Bank, afterwards loaned Nibert more money with knowledge of the prior assignment and necessarily assumed responsibility for the acceptance of the Central State Bank.

The record presents no error, and therefore the judgment is affirmed.